# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVSION

UNITED STATES OF AMERICA

V.

                                           CASE NO. 2:23-CR-87-TPB-KCD

ROBERT WRIGHT

## DEFENDANT'S REQUEST FOR VARIANCE, AND SENTENCING MEMORANDUM

     Comes Now the Defendant, Robert Wright, by and through his undersigned attorney, and would respectfully submit this Sentencing Memorandum, after receiving and reviewing the Pre-Sentence Investigation Report (PSR), filed October 27, 2023, and would request a variance from the United States Sentencing Guidelines (USSG) in the above-referenced case, and would state in support as follows:

     1. The Defendant pled guilty on September 08, 2023, to a two count Information, relating to the possession and sale of 3-D printed guns which were un-serialized and/or qualified by characteristic as a machine gun, in violation of Title 26 U.S.C. § 5861(i) and Title 18 U.S.C. §922(o). The Defendant admitted his responsibility to the Government before the plea, resulting in the above-referenced Information being filed.

     2. The Government has agreed to recommend a reduction in sentence for acceptance of responsibility, pursuant to USSG § 3E1.1, and an additional reduction of one level for notifying the Government of his intention to enter a plea of guilty. The PSR reflects these reductions.   The Government has also agreed to recommend the low end of the applicable sentencing guidelines.

3. The Defendant has no objections to the factual accuracy of the report. An objection to the guidelines as calculated in the PSR was submitted by undersigned Counsel to the United States Probation Office November 9, 2023 and a formal objection filed in the record on December 28, 2023. An agreement on the objection was made January 3, 2024 and the Defendant has been informed that an amended PSR will be filed by the United States Probation Office reflecting a resolution of this issue.

4. Although Defendant is in agreement that the Criminal History Category (CHC) is correctly calculated in the PSR at a Level II, the Defendant would respectfully request a downward variance reducing the Defendant's Criminal History Category to a I, based on Amendment 821 to the Guidelines that went into effect on November 1, 2023 which would have placed his CHC at a Category I. This request is also supported by the §3553 factors discussed below which Defense submits show that the Defendant's prior history and actions in this case are more appropriately reflected under a Category I.

**Request for Variance Pursuant to Title 18 U.S.C. §3553 (1)**

5. The Defendant would respectfully request that the Court sentence the Defendant below the guideline recommendation, pursuant to Title 18 U.S.C. §3553, and in Section Two of this Memorandum. Mr. Wright seeks a variance for the following factors: his medical condition, the need to provide counseling/rehabilitative programs, the characteristics of the Defendant as to his youthfulness and immaturity and the vulnerability of the defendant to victimization or abuse in prison.

   **I. Circumstances of the Offense and Characteristics of the Defendant**

6. In the months before the entry of the plea, the Defendant met numerous times with the undersigned attorney regarding the offense. These meetings resulted in the

successful resolution of the case without indictment, testimony or trial. The Defendant acknowledged his wrongdoing, and explained the events that had occurred, including providing a proffer with the Government. In a series of conversations with the undersigned attorney, the Defendant was (and is) remorseful, always accepting his responsibility for this chain of events.

## The Defendant

7. The Defendant, a 21 year old male, was born and raised in Fort Myers, Florida. The Defendant had a particularly hard childhood in that his biological parents both struggled with addiction issues and the Defendant was a victim of both neglect, abandonment and physical abuse. Beginning at the earliest age he witnessed drug use, domestic violence and the home was unstable and chaotic[1]. This culminated in the removal of the Defendant at 6 years old by DCF and he was placed with his paternal grandparents. His biological mother, due to her addiction issues, was in and out of jail throughout his life and presently the Defendant has not seen or heard from his mother in the last three years.

8. Upon being placed with his grandparents, it was immediately apparent to them that the Defendant was socially and emotionally damaged and was falling well behind academically where other children his age were. The Defendant was tested and formally diagnosed with two neurodevelopmental disorders: Autism Spectrum Disorder, presenting as Aspergers as well as Attention Deficit Hyperactivity Disorder (ADHD)[2]. Since initial

---

[1] Pre-sentence Investigation Report, United States Probation Officer Megan Amadori, page 10, authored October 27, 2023. *See also*, Psychological Evaluation, Dr. Brian Olby, PH.D., authored February 6, 2011. Mr. Wright was referred for psychological evaluation after DCF received an abuse report related to his step-mother abusing drugs. When questioned step-mother reported that that Robert, his little sister and herself were kidnapped and held against their will for over 17 hours. She stated she was forced to use crack cocaine, given Valium and does not remember everything that occurred. She reported that the kidnapper struck her in the face with a brick paver.

[2] Psychological Evaluation, Dr. Brian Olby, PH.D., authored February 6, 2011. *See also*, Medical Report, Dr. Brittany Nelson, PsyD., authored February 13, 2019; Psychological Evaluation, Dr. Nolan Katz, authored

diagnosis at age 6, Defendant has also suffered from and been intermittently treated for chronic anxiety and depression.

9. Asperger's syndrome is a pervasive neurodevelopmental disorder characterized by severe challenges in social interaction and nonverbal communication, coupled with repetitive behaviors and narrow interests[3]. Individuals with Asperger's often exhibit intense focus on specific topics, adherence to routines, and difficulty understanding social cues or norms. Unlike classical autism, those with Asperger's typically have average to above-average intelligence and language development. Individuals with this disorder struggle in understanding social cues and expressing empathy, leading to challenges in forming and maintaining friendships. They are especially susceptible to being victimized by being put up to behaviors that they do not understand are dangerous.

10. Attention Deficit Hyperactivity Disorder (ADHD) is characterized by persistent patterns of inattention, hyperactivity, and impulsivity that significantly interfere with daily functioning and development[4]. Impulsivity can lead to hasty decision-making and challenges in inhibiting inappropriate responses.

11. Even after diagnosis and the implementation of therapy, medicine and educational supports like 504s and IEPs, the Defendant struggled through childhood to fit in amongst his peers[5]. Mr. Wright is severely introverted and restricted in his ability to show emotion or feel comfortable in most interpersonal communications and relationships. As

---

March 23, 2020.

[3] Asperger's Syndrome. http://www.health.harvard.edu/newsletter_article/aspergers-syndrome

[4] Attention-Deficit/Hyperactivity Disorder. http://www.nimh.nih.gov/health/topics/attention-deficit-hyperactivity-disorder-adhd

[5] Pre-sentence Investigation Report, United States Probation Officer Megan Amadori, page 15, authored October 27, 2023.

such, Mr. Wright comes off as shy, awkward and uninviting. He was bullied in school by peers and at times ostracized by teachers. He has very few friends or hobbies. His grandparents state that the friends he does make tend to be ones who exploit his Aspergers. Despite his considerable intelligence and ability to excel in trade activities like mechanics, automotives and basic engineering, medical testing and records show that Robert understands and responds to social cues and communication at the level of a child.

12. It's significant to note that in 2021, Mr. Wright was the victim of an attempted car jacking and robbery. He was threatened at gun point and then shot in the left arm after refusing to get out of his vehicle. He under went surgery to remove bullet fragments from his arm and therapy notes from that same year note that he is suffering from PTSD and severe anxiety in addition to his other disabilities[6].

13. Mr. Wright also suffers from health issues related to a serious car accident he was involved in during May of 2022 when another driver ran a stop sign and hit his vehicle. He severely injured his lower back (lumbar strain, disc bulge and fracture of L3 vertebrae) and clavicle, which has resulted in almost constant pain. He has trouble walking, sleeping and has continued stiffness in his neck and back. While he has been in custody on this case he has been unable to pursue additional medical treatment, specifically physical therapy and a follow-up surgery to remove metal in his clavicle.

## II. 18 U.S.C.§3553 CONSIDERATIONS SUPPORT A DOWNWARD VARIANCE

14. Mr. Wright admittedly committed a very serious federal crime. However, consideration of the circumstances and facts surrounding the offense, as well as his

---

[6] Medical Report, Dylan DeMars, PMHNP-BC, authored August 20, 2021.

personal history and characteristics shows that the purposes of sentencing indicated in §3553 are not served by a lengthy period of incarceration. Mr. Wright seeks a downward variance based upon several points and respectfully asks the Court consider the information that was presented in the background section above. In considering the factors enumerated under 18 U.S.C. §3553(a) in relation to Mr. Wright, the defendant submits to this Court that based on factors one and two, a downward variance is appropriate.

> A. *"the nature and circumstances of the offense and the history and characteristics of the defendant."*
>
> **(1) *Youthfulness, neurological developmental disorder and vulnerability to victimization***

15. Mr. Wright warrants a downward variance because at the age of 21, he has no prior felony convictions and very minimal criminal history. Upon discovery of his crime and confrontation by law enforcement, Mr. Wright took immediate acceptance of responsibility, worked with law enforcement and showed immediate remorse. He has no history of substance abuse. He has overwhelming support from his grandparents. He also has exhibited qualities indicating his potential for rehabilitation. He has been faced with many, many obstacles in his short life: abuse, neglect, abandonment as a child, struggles in school and with peers due to Aspergers and ADHD, a horrific car accident that has caused severe daily physical issues and being shot during an attempted robbery. In each instance he has continued to push forward and shown a true desire to be a successful, contributing member of society.

16. There is a growing recognition that prisons are not a solution in the case of those who are developmentally disabled or suffer from mental illness. Additionally, medical

studies have continued to find that the most severely impaired people with ADHD (those with co-occurring conditions such as Autism) benefit the most from the combination of carefully managed medication and behaviorally oriented therapy[7]. Prisons are not the most effective place for treatment, and both the Defendant and the public are better served by treatment alternatives[8]. The Defendant and his family have spent considerable time coming up with alternative plans of how to help the Defendant move forward positively when he is released from custody. The Defendant is now acutely aware that his choice to not utilize therapy and psychiatric medication to assist in the management of his disabilities has resulted in a downward spiral of his life. He now appreciates that his efforts to "holistically" self-manage will not work. Upon his release the Defendant has agreed to attend treatment at New Directions[9], which is program designed specifically for young adults with autism spectrum disorder and other executive functioning deficits. The program will provide an individualized plan that is coordinated using a clinical approach called Direction Therapy, which incorporates cognitive behavioral therapy, psychology, psychiatry, vocational training and life management skills. As stated, Mr. Wright has embraced that psychiatric intervention is a tool that can assist him in overcoming his disability and is open to accepting and using that tool.

      17. There is a future for Mr. Wright. In addition to the program, he has expressed and shown acute interest in automotive work. He has been offered two different apprenticeships by employers who want to mentor and develop his clear gifted ability in this area. They are both aware of his disability, as well as the federal case, but have seen

---

[7] Jensen et al., *NIMH Multimodal Treatment Study of ADHD (MTA): Implications and applications for primary care providers.* 60-73 (2001).
[8] United States v. Bannister, 786 F. Supp. 2d 617, 656-67 (E.D.N.Y. 2011).
[9] https://ndfya.com

what a hard worker he is and are willing to take a chance on someone they know has talent and can be a contributing member of society.

18. Mr. Wright's biggest hurdle is one that he has been working his entire young life to improve- his social and communication impairments. This is typical of young people with autism; while they are not impaired across the board, as an intellectually handicapped person would be, they do suffer serious impairment in key areas. His strengths mask or seem to downplay the relative deficits. But closer examination of Mr. Wright's history and functioning show that he is seriously disabled by ASD.

19. This is the reality of understanding with those who suffer from autism. Mr. Wright's whole life has been affected by this condition. Social deficiencies associated with ASD, specifically naiveté or the inability to recognize the intentions of others, can lead to offending. Individuals with ASD may have difficulties making friendships, and may mistake malevolent intentions with friendship, leading to their risk of exploitation[10]. Simply put, those with ASD lack the street smarts to protect themselves from those who intend to manipulate them for their own benefit.

20. Even the characteristics and circumstances of this case show how ASD was a contributing factor to the Defendant's commission of the crime. As described above, Mr. Wright has struggled his entire life to make friends, and the handful of friends he did make were usually those who understood they could easily manipulate him. In this case, Mr. Wright was encouraged by one of his only two friends, to begin learning how to print 3-D firearms on his 3-D printer. Mr. Wright admittedly then pursued that suggestion. Mr. Wright was then approached about two months later by this same friend, who unbeknownst to him had become a CI for the government after himself being involved in a separate

---

[10] PATRICIA HOWLIN, Autism and Aspergers Syndrome: Preparing for Adulthood 323-324 (2004).

criminal investigation. Mr. Wright was asked by the CI to print and sell firearms to someone that the CI would introduce him too. The CI repeatedly asked Mr. Wright to "help him out" and Mr. Wright ultimately complied. Mr. Wright had never sold any firearms to anyone prior to this. His three sales to the undercover agent are in fact the only time Mr. Wright ever sold firearms to anyone. This explanation is in no way offered to minimize Mr. Wright's responsibility or accountability in this case. Rather, it's to illustrate that Mr. Wright lacks the social and emotional intelligence due to his Asperger's Syndrome to understand when he is being manipulated to the benefit of another.

21. Within the prison environment, Mr. Wright's social communication deficits will render him unable to recognize attempts at future manipulation or exploitation. It would be doubtful he would be perceptive enough to recognize when he is being misled. An incident that occurred while Mr. Wright has been in custody awaiting sentencing on this case is a perfect example. In November of 2023, Mr. Wright was written up for a policy violation and sentenced to solitary confinement due to the corrections staff finding a single pill in his cell that had been administered to him that morning during the medication hand out but clearly not taken. When questioned about why he had not taken the pill Mr. Wright explained that another inmate had told him that the pills would "give him arthritis" if he consumed them and he became concerned that his medical issues would in fact be aggravated if he continued taking the pills. When it was explained to Mr. Wright that perhaps his fellow inmate was being dishonest and additionally didn't have the training or experience to be giving medical advice, Mr. Wright was genuinely surprised at this common sense reasoning and the idea a fellow inmate would mislead him.

22. There is real concern due to Mr. Wright's disability about his ability to be adequately self-protective and being able to adequately diffuse or neutralize potentially

volatile situations. A lengthy incarceration period would only serve to place Mr. Wright as a higher risk of being abused by other inmates due to his inability to navigate the complex social gauntlet of prison. He will be psychologically exploited by other inmates and his behavioral eccentricities and anxiety will also make him a clear target for antisocial inmates.

23. A detailed report authored by former Federal Bureau of Prisons Chief Psychiatrist Dr. Shelley Stanton specifically regarding her evaluation of Mr. Wright and his case echoes these exact concerns. Dr. Stanton details the realities of prison culture and life, which is controlled by innumerable rules, "written and unwritten, spoke and unspoken, which must be adhered to for safe and successful functioning within the BOP….The inmates also have complex expectations and rules regarding life in prison which are not documented. These expectations and rules are arguably even more crucial for living safely within the prison system.[11]" His medical and educational records show a repeated life pattern, due to his disability, of being someone who is motivated to please others and someone who can't adequately judge social situations.

24. Dr. Stanton also expresses concern about Mr. Wright's susceptibility to frequent misunderstandings by BOP staff and the availability for him to have access to interventions aimed at helping him successfully adapt to the prison environment. As Dr. Stanton points out, "while individual therapy is permitted in the BOP, its availability is again severely limited due to staff shortages, especially at care 1 or 2 institutions. Any specific mental health treatment tailored to his needs would not be available.[12]"

25. Further, while the BOP currently does have policy pertaining to individuals with

---

[11] Declaration from Dr. Shelley Stanton, M.D., page 13, authored November 13, 2023.
[12] *Id*., at 20.

disabilities, including Autism/Aspergers, the policy is limited to discretionary, not mandatory accommodations. There is no specific programs for individuals with ASD or learning disabilities. Modification of available programs for individuals with disabilities again is discretionary and policy only states that modification can be made to the extent possible unless it would cause an undue burden. The term "undue burden" is not defined. Given Mr. Wright's educational and vocational needs, which have been well documented throughout his life, accommodations for his disabilities would involve intense individual support and interventions. This type of intense, individualized support would be unavailable due to severe staffing shortages, money and time.

26. It is established[13] that courts may consider this risk of abuse and vulnerability to victimization in prison as a basis to depart or grant a variance. Specifically, in *United States v. Parish*, 308 F.3d 1025 (9th Cir. 2002) and *United States v. Wilke*, 995 F. Supp. 828 (N.D. Ill. 1998) the Court granted an eight level and four level departure respectively in child porn cases after finding that the defendant's appearance, high susceptibility to abuse in prison, demeanor and conviction for an offense involving children subjected the defendants to a high degree of vulnerability in prison.

> B. *"the need for the sentence imposed to (a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; (d) to provide the defendant with needed*

---

[13] *Koon v. United States*, 518 U.S. 81 (1996), holding that there was no abuse of discretion to grant downward departure to police officers convicted of civil rights violation because of vulnerability in prison; *United States v. Graham*, 83 F.3d 1466, 1481 (D.C. Cir. 1996), extreme vulnerability to abuse in prison is grounds for departure.

> *educational or vocational training, medical care, or other correctional treatment in the most effective manner"*

27. While it is true that Mr. Wright has a small prior criminal history and past incidents that involved law enforcement, it is also true that this is the first time that he has spent any significant period of time incarcerated. When he was arrested in December of 2020, Mr. Wright spent only 10 hours total in the Lee County Jail. Since his arrest in this case on July 13, 2023, he has remained in federal custody.  These past six months in Charlotte County Jail as not only an inmate with a disability but as one of the youngest inmates in federal custody have been a significant eye opener for the Defendant. This time in custody and the opportunity to reflect on the probability of spending a significant portion longer has re-enforced a respect for the law and provided a more than adequate lesson to deter any future criminal acts by Mr. Wright.  Additionally, Mr. Wright is now forever marked as a federally convicted felon.

28. The collateral consequences of a felony conviction form a new basis of punishment for criminal defendants.  Convicted felons now face restrictions in all aspects of our society:  politically, economically, and socially.  There are now more public benefits to lose, and more professions in which a license or permit or ability to obtain a contract are not available to a convicted felon.  The collateral consequences of the Defendant's felony conviction are far reaching.  The brick walls, difficulties and impediments the Defendant will  have with international travel, rental agreements, loan applications, petitions for licenses, Social Security benefits, and citizenship privileges such as voting and jury service, are all things that will continue to serve as punishment for the Defendant's criminal activities.   The new and higher walls Mr. Wright will face will be a constant reminder to him of the seriousness and consequences of his actions for the rest of his life.

29. The term "collateral sanction" means a legal penalty, disability or disadvantage, however denominated, that is imposed on a person automatically upon that person's conviction for a felony, misdemeanor, or other offense, even if it is not included in the sentence.  American Bar Association, Collateral Sanctions and Discretionary Disqualification of Convicted Persons (2016).  The Defendant has taken full responsibility for his actions.  This is not meant to suggest that these collateral consequences should always, or even often, likely to result in a non-prison sentence.  But these collateral consequences weigh heavily over Mr. Wright and his circumstances. Combine these sanctions with the strict mandatory conditions of supervised release and it is possible that the Court is presented with a situation where a long term incarceration is not the appropriate sentence for this individual given the totality of circumstances.

30. Offender characteristics are a large part of deciding what sentence to impose to protect the public interest. Support for this consideration as a factor in fashioning a sentence that is reasonable and not more than necessary, attached to this memorandum are letters from his family and friends. The letters state that Robert is a kind, caring person in all respects and that he is someone who has proven he will work to overcome life's hardships and be a contributing member of society.  These character letters are extraordinary in their community support for the kind of person Robert really is. (See attached exhibit).

31. In addition to these letters, the report from Dr. Stanton specifically notes that Mr. Wright's needs and opportunity to participate in programming for rehabilitation or reducing recidivism will not be available to him in BOP. He will unable to participate in programming which result in a reduction of his sentence, placement in home confinement or halfway house placement[14].

---

[14] Declaration from Dr. Shelley Stanton, M.D., page 22, authored November 13, 2023.

**Conclusion**

The Defendant is asking the Court to consider the Section 3553(a) factors in determining whether a guideline sentence serves the objectives of sentencing. Those factors are directly stated in Section 3553(a), and they go to the heart of the nature and circumstances of the individual case, the reflection on the individual history and characteristics of the defendant, and the need for the sentence to provide just punishment, deterrence, incapacitation, and rehabilitation. Title 18 U.S.C. Section 3553(a)(2). The Court can vary downward on these factors, again, based on the nature and circumstances of the offense, and the history and characteristics of the defendant, and because the defendant does not pose a danger to the public. The defense would respectfully request, given the consideration of all of the above, the court to sentence Mr. Wright to credit for all time that he has served in custody, followed by a period of four years of federal community control.

/s/ Danielle L. O'Halloran
Danielle L. O'Halloran
Ringsmuth, Day & O'Halloran
Attorney for Defendant
2215 First Street
Fort Myers, FL  33901
T: (239) 332-2500
Email: DLO@swfljustice.com
Fla. Bar No. 59193

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2024, I provided this electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of  electronic filing to Assistant United States Simon Eth, Middle District of Florida.

/s/ Danielle L. O'Halloran
DANEILLE L. O'HALLORAN,
ESQUIRE